IN RE DISQUALIFICATION OF TYACK.

ELECTRONIC CLASSROOM OF TOMORROW *v.* DEPARTMENT OF EDUCATION.

2017-Ohio-5719.]

(No. 17–AP–032—Decided May 8, 2017.)

O'CONNOR, C.J.

{¶ 1} Marion H. Little Jr., counsel for appellant Electronic Classroom of Tomorrow ("ECOT"), has filed an affidavit with the clerk of this court under R.C. 2501.13 and 2701.03 seeking to disqualify Judge G. Gary Tyack from presiding over any further proceedings in the above-captioned case, which has been consolidated with another appeal brought by ECOT students and families.

{¶ 2} For the reasons explained below, Mr. Little has not established that the extraordinary remedy of disqualification is necessary in this case.

## Background

{¶ 3} ECOT is an Internet or computer-based community school, otherwise known as an "e-school." The underlying case presents several legal issues about how the Ohio Department of Education (the "department" or "ODE") should calculate ECOT's percentage of full-time students and, in turn, its state funding.

{¶ 4} Mr. Little seeks Judge Tyack's removal based on three exchanges between the judge and counsel at the recent appellate oral argument. In the first exchange, Judge Tyack asked Mr. Little how ECOT could determine whether an individual logging onto ECOT's educational program is indeed an enrolled student, rather than, for example, a student's mother. Mr. Little responded that ECOT had a proctoring process to test students and that the judge's question—which Mr. Little believed was a criticism of the e-school model—was "better directed to the General Assembly." The following exchange then occurred:

> JUDGE TYACK: The General Assembly cares more about what Mr. [Lager, the founder of ECOT] thinks and what David Brennan thinks than about what I think, frankly.
>
> MR. LITTLE: Well, I don't think that's a fair criticism or comment of the Court in the context of—I don't mean any disrespect, Your Honor, but I don't think this case should be turned on whether—what people's perspective of lobbying activity or how legislation's passed.
>
> JUDGE TYACK: It's hard to ignore the fact that between the two of them they've probably gotten a billion dollars worth of State funds that would have gone to public schools because of their clout. In Russia we call them oligarchs. Here, we don't call them anything. We call them influential donors.
>
> MR. LITTLE: Well, I think you might have that same criticism of every piece of legislation that moves its way through the General Assembly.

{¶ 5} The second and third exchanges occurred between Judge Tyack and the department's counsel, Douglas Cole:

> JUDGE TYACK: I'm more than a little concerned about the fact that the system ODE has set up here does virtually nothing to guarantee that the enrolled student is actually on the computer.
>
> MR. COLE: Your Honor, I think—
>
> JUDGE TYACK: You've got—you got a situation where if somebody uses their—the words to log-on and then goes to bed for 10 hours, how does ODE know that the student has received any—any learning opportunity at all?
>
> MR. COLE: I think that's a difficulty with the model that ECOT and other online schools use, Your Honor. I think there are concerns in that regard, but what we're looking at here in terms of funding is just what is the funding construct that's created with the statute. I agree that's a legitimate concern. I don't think it's an ODE concern. It's a—it is an ODE concern, but it's also an ECOT concern.
>
> * * *
>
> JUDGE TYACK: As somebody who practiced law for a period of time representing juveniles, I ran into some people who said, oh, neat, I can sign up for electronic school. I'll never have to go in a school building again, and they won't even check to see if I'm on the computer. I hold ODE partly responsible for the system it set up here, but I also personally hold ECOT somewhat responsible for the system it's making a lot of money off of the setup here. How do you correct it?
>
> MR. COLE: I think that's a public policy question that's—
>
> JUDGE TYACK: So we're going to turn it over to the lobbyists?
>
> MR. COLE: To the legislature, Your Honor.
>
> JUDGE TYACK: To the lobbyists.

{¶ 6} According to Mr. Little, Judge Tyack's derogatory and extrajudicial comments about ECOT's founder, William Lager, and his purported lobbying activities, along with the judge's negative comments about the e-school model, reflect an inherent bias against ECOT and "an appearance that he is likely to allow his personal beliefs to impact his judicial decision-making."

{¶ 7} Judge Tyack has responded in writing to the affidavit, affirming that he can be fair and impartial in this case. The judge states that his questions were intended to probe ECOT's theory that it is entitled to public funding based upon

the enrollment of a student, regardless of whether the student was actually at the computer. Regarding his use of the term "oligarch," Judge Tyack states that "[i]n Russia an oligarch is an individual with ties to the government who is paid large sums of money for providing a service formerly provided by the government." Judge Tyack notes that he aggressively questioned both sides in this case and that his questions and comments give no insight into how the three-judge panel of the court of appeals will rule.

### Merits of the affidavit of disqualification

{¶ 8} "The term 'bias or prejudice' 'implies a hostile feeling or spirit of ill-will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.' " *In re Disqualification of O'Neill,* 100 Ohio St.3d 1232, 2002-Ohio-7479, 798 N.E.2d 17, ¶ 14, quoting *State ex rel. Pratt v. Weygandt,* 164 Ohio St. 463, 469, 132 N.E.2d 191 (1956). Contrary to Mr. Little's assessment, most of Judge Tyack's challenged comments here relate to his opinion on lobbying and the legislative process—rather than any hostility toward ECOT or a fixed anticipatory judgment on the specific statutory and legal issues before the court of appeals. Even if the judge's questioning conveyed a negative impression of the e-school model, judicial bias against a party will not be presumed because a judge has developed views about matters of public policy. *See* Flamm, *Judicial Disqualification,* Section 10.7, at 271–272 (2d Ed.2007) ("there exists a strong presumption against disqualifying a judge solely on the basis of her views about public policy, or even the policy underlying the specific law she is bound to apply in a particular case" [footnote omitted]). Thus, although Judge Tyack's editorializing about lobbyists and the legislative process was unnecessary, these comments do not establish that he is biased against ECOT or warrant his removal from this case.

{¶ 9} To be sure, Judge Tyack's description of Mr. Lager as an "oligarch" was unacceptable. The Code of Judicial Conduct mandates that a judge be dignified and courteous toward litigants and others with whom the judge deals in an official capacity. *See* Jud.Cond.R. 2.8(B). Judge Tyack's comments were far from dignified or courteous. Such unnecessary and demeaning comments have no place on the appellate bench and serve only to diminish the public confidence in the judiciary.

{¶ 10} That being said, undignified comments alone do not always reflect judicial bias or preclude a judge from fairly and impartially deciding the legal issues in a case. *See, e.g., In re Disqualification of Corrigan,* 105 Ohio St.3d 1243, 2004-Ohio-7354, 826 N.E.2d 302 (denying an affidavit of disqualification despite the judge's referring to counsel in the case—whom the judge believed had

acted foolishly—as "jackasses" and criticizing their clothing and jewelry). Nor is a judge's aggressive questioning of counsel during oral argument necessarily indicative of bias or partiality. Judge Tyack acknowledges that his "oligarch" comment was tangential to the central issues in the case, and he affirms that he can be fair and impartial. Mr. Little has not proved otherwise.

{¶ 11} Mr. Little's affidavit discusses two decisions granting affidavits of disqualification—*In re Disqualification of Sutula*, 149 Ohio St.3d 1219, 2016-Ohio-8599, 74 N.E.3d 449, and *In re Disqualification of Winkler*, 135 Ohio St.3d 1271, 2013-Ohio-890, 986 N.E.2d 996—but those cases are distinguishable. In *Sutula*, a trial judge was disqualified from resentencing a defendant because at the initial sentencing, the judge referred to a magazine article about the local drug epidemic and specifically linked the defendant's crimes to the victims identified in the article—although nothing in the record had tied the defendant to the article. The judge's remarks suggested that she had "relied on an extrajudicial factor to support her sentence." *Sutula* at ¶ 7. That fact—combined with the judge's undignified comment about the defendant's parents and her failure to give the defendant an opportunity to speak at sentencing—led to her removal from the case.

{¶ 12} Mr. Little asserts that Judge Tyack's comments about Mr. Lager were unrelated to any issue presented on appeal and are therefore similar to the judge's comments in *Sutula*. However, the department's merit brief—which Mr. Little attached to his affidavit of disqualification—indicates that information about Mr. Lager and the relationship between his for-profit companies and ECOT are indeed part of the record in this case. Judge Sutula appeared to rely on extrajudicial information to justify her sentence because she stated *at sentencing* that she was "sure" that some of the individuals listed in the article were the defendant's clients. *Sutula* at ¶ 7. In contrast, Judge Tyack made inappropriate comments in an exchange with counsel at oral argument. Although an appellate judge's questions or comments at oral argument *may* give some insight into a judge's position in a case, they do not guarantee how the judge will rule. And nothing here establishes that Judge Tyack will rely on information outside the record to decide this case. The reasoning in *Sutula* does not apply here.

{¶ 13} In *Winkler*, a trial judge was disqualified from resentencing a defendant because the judge made a series of disparaging remarks about the defendant at his initial sentencing that could have caused an objective observer to question whether the judge had developed hostile feelings toward the defendant and whether the judge would be able to fairly and impartially weigh any arguments that the defendant offered on resentencing. *Winkler* at ¶ 6, 11. In contrast, Judge Tyack made two brief comments about Mr. Lager, who does not appear to

1260

be an individual party in this case and whose current involvement with ECOT is unclear based on this record. And Judge Tyack aggressively questioned *both* parties in this case. It simply cannot be said that he showed favoritism toward the department.

{¶ 14} In the end, Judge Tyack's personal comments about Mr. Lager were out of line. However, Mr. Little has not sufficiently explained why the judge's negative comments about Mr. Lager evidence bias or a predetermination of the legal issues before the three-judge panel. The disqualification of a judge is an extraordinary remedy. "A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George,* 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. Without more, those presumptions have not been overcome in this case.

{¶ 15} Accordingly, the affidavit of disqualification is denied. The case may proceed before Judge Tyack.